118 P.3d 632

Michael P. SNYDER, Petitioner,

v.

The Honorable Richard W. DONATO, Judge of the Superior Court of the State of Arizona, in and for the County of Yuma, Respondent Judge,

State of Arizona, Real Party in Interest.

No. 1 CA–SA 05–0112.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 30, 2005.

Law Office of Maria Elena Cruz, PLLC By Maria Elena Cruz, Yuma, Attorneys for Petitioner.

Jon R. Smith, Yuma County Attorney By Roger Nelson, Deputy County Attorney, Yuma, Attorneys for Real Party in Interest.

## OPINION

LANKFORD, Judge.

¶ 1 This opinion involves a rule that alters the time to bring a criminal case to trial. The State obtained additional time because it intended to present DNA evidence. The superior court found that the involvement of DNA evidence made this a "complex case" and enlarged the time pursuant to Arizona Rule of Criminal Procedure 8.2(a)(3). Because that ruling misapplied the rule and is not supported by the record, we accepted jurisdiction and granted relief by previous order. This opinion both discusses the speedy trial rules and explains our order granting relief.

¶ 2 An explanation of some facts is necessary to illuminate the role of DNA evidence in this criminal prosecution. Before this case, Petitioner was arrested in a separate case involving a different victim and was charged with sexual conduct with a minor.[1] Petitioner was arrested again and charged with molestation of a child on November 1, 2004 based on conduct alleged to have taken place in 2001.

¶ 3 Not until March 17, 2005, more than four months after the Petitioner's arraignment, did the State begin the process of obtaining a DNA sample from the alleged victim in the earlier case. When asked why he did not "go down and see" the alleged victim in the other case, the detective in charge of petitioner's case answered that he "didn't have the opportunity to" because he has "other cases, things going on, court dates." The State's avowed purpose was to use the DNA sample as other acts evidence to show petitioner's alleged aberrant sexual

1. Petitioner allegedly fathered a child with the alleged victim in that case, his fifteen-year-old stepdaughter.

propensity. The superior court has not ruled whether the DNA evidence is admissible.

¶ 4 Trial was to begin on April 12, 2005. However, on April 5, 2005, the State successfully moved to designate this case as "complex" to allow the completion of DNA analysis. The State argued that due to "the DNA lab's ability to turn around samples," it would "take about 60 days" for testing to be completed. The superior court's order changing the time limit relied on the following facts:

late discovery; the unknown location of the child; the lack of cooperation by the alleged victim of the child molesting, which resulted in the birth of the child; whether the evidence will be admissible in the new trial; and incomplete scientific testing. . . .

¶ 5 The superior court did not set a date by which the State must conduct its testing of the DNA evidence, did not specify the length of the continuance, and did not set a new trial date. No speedy trial violation had occurred at the time this case was designated complex.

¶ 6 Our decision to accept special action review is highly discretionary. *See* Ariz. R.P. Spec. Act. 3, note ("The special action requests extraordinary relief, and acceptance of jurisdiction of a special action is highly discretionary with the court to which the application is made."). Special action jurisdiction is appropriate when, as in this case, "a special action on speedy trial issues promotes judicial economy." *State v. Tucker,* 133 Ariz. 304, 306, 651 P.2d 359, 361 (1982). Because a speedy trial violation could entitle petitioner to dismissal, we need not permit this matter to proceed to trial without addressing whether the superior court's action was an error that ultimately may result in reversal. *See* Ariz. R.Crim. P. 8.6; *Harris Trust Bank v. Superior Court,* 188 Ariz. 159, 162, 933 P.2d 1227, 1230 (App. 1996). Moreover, special action jurisdiction is appropriate because this case involves an issue of first impression and an issue of law likely to recur. *See State ex rel. Pennartz v. Olcavage,* 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001) (special action jurisdiction appropriate in cases involving a matter of first impression or statewide significance, or pure questions of law); *Raney v. Lindberg,* 206

Ariz. 193, 196, ¶ 5, 76 P.3d 867, 870 (App. 2003) (special action review in case involving important questions of law likely to recur and undisputed facts).

¶ 7 The issue raised is whether a "complex case" designation was properly invoked under Rule 8.2(a)(3)(iii). Technically speaking, a complex case designation only extends the outer time limits within which a defendant must be tried. However, the effect of such a designation is analogous to the granting of a continuance. When it is alleged that the superior court improperly granted a Rule 8 continuance "[w]e will not disturb a ruling on a motion for continuance absent a clear abuse of the trial court's discretion." *State v. Lukezic,* 143 Ariz. 60, 68, 691 P.2d 1088, 1096 (1984). *See also State v. Spreitz,* 190 Ariz. 129, 136, 945 P.2d 1260, 1267 (1997) (A Rule 8 ruling "will be upheld unless an appellant demonstrates that the court abused its discretion and that prejudice resulted."). We review the superior court's designation of "complexity" with the same deference.

¶ 8 The right to a speedy trial is both constitutional and statutory. *See id.* The statutory right to a speedy trial has its foundation in several rules of criminal procedure, all of which work together to protect defendants' constitutional rights to speedy trials. *See State v. Adair,* 106 Ariz. 58, 60, 470 P.2d 671, 673 (1970) (Arizona Constitution and criminal rules protect right to speedy trial). Although these rules govern the time within which a defendant must stand trial, some of them provide for additional time under certain circumstances. *See* Ariz. R.Crim. P. 8.1, 8.4, and 8.5. Because no constitutional speedy trial issue is presented to us, we decide only the application of the rules.

¶ 9 The superior court invoked Rule 8.2(a)(3). Rule 8.2 establishes the outer time limits within which a trial must commence. Rule 8.2(a) establishes the time in which a person "against whom an indictment, information or complaint is filed shall be tried by the court having jurisdiction of the offense. . . ."

¶ 10 Rule 8.2(a)(3) provides a different time within which defendants in "complex cases" must be tried: "One year from arraignment for cases in which the indictment, information or complaint is filed between December 1, 2002 and December 1, 2005, and for subsequent cases 270 days from arraignment...." Ariz. R.Crim. P. 8.2(a)(3). The rule does not mandate a finding of complexity in any given circumstance and the superior court presumably has some discretion when determining whether a case is complex. However, the court must make a "written factual finding" supporting the complex case designation. Ariz. R.Crim. P. 8.2(a)(3)(iii).

¶ 11 Rule 8.2 does not define "complex case." The comment to the rule offers examples:

> Subsection (a)(3) was added because certain cases will be more complex than others and the usual time limits should be extended. In addition to homicide and wiretap cases, *such cases may include those involving DNA or complex scientific evidence,* complicated fraud cases, or certain sex cases. Although one year, or after December 1, 2005, 270 days is established as the outside time limit, the Court may consider a lesser period of time if appropriate. This subsection does not preclude application to the Supreme Court for suspension of the rules pursuant to Rule 8.5.

Ariz. R.Crim. P. 8.2(a)(3), committee cmt. (emphasis added). Aside from this comment, no Arizona authority discusses or applies this provision, which was added in 2002.[2]

■ ¶ 12 We nevertheless must determine what constitutes a "complex case" within the ambit of Rule 8.2(a)(3) and whether this case meets that standard. We propose the following definition of "complex case": A case so complicated, by virtue of its nature or because of the evidence required, that the ordinary limits for the time to trial are insufficient and must be extended to afford more time to prepare so that the case can be fairly and fully presented.

¶ 13 We take the meaning of "complex" at its face value. A matter is complex if it is "[c]omposed of interconnected or interwoven parts" or "[i]nvolved or intricate, as in structure." Webster's II New College Dictionary 229–230 (2001). By referring to both types of cases (homicide and fraud) and types of evidence (wiretap and DNA), the comment to Rule 8.2(a)(3) suggests the nature of the qualifying complexity. Moreover, in fashioning our definition of "complex case" and applying the rule, we also draw upon related Arizona Rules of Criminal Procedure and an analogous federal statute, as discussed below.

¶ 14 The meaning of our complex case rule is illuminated by related Arizona Rules of Criminal Procedure. The speedy trial rules are designed to protect a defendant's constitutional right to a speedy trial. *See Adair,* 106 Ariz. at 60, 470 P.2d at 673. A deviation from the usual time limits is the exception, as illustrated by rules outlining the circumstances in which speedy trial time limits can be extended. Specifically, three rules provide exceptions to the speedy trial time limits: Rules 8.1, 8.4, and 8.5. Rule 8.1 provides that "extraordinary cases" may justify suspension of speedy trial requirements. Ariz. R.Crim. P. 8.1(e). Rule 8.4(c) allows the exclusion from speedy trial time those "[d]elays resulting from extension of the time for disclosure under Rule 15.6." Rule 15.6(e) in turn allows extensions of time for the disclosure of "scientific evidence." And Rule 8.5(b) provides for suspension of speedy trial time when "extraordinary circumstances exist" and when delay is "indispensable to the interests of justice." These rules define circumstances warranting suspension or extension of speedy trial time limits. The rules appear to overlap. A complex case, for example, could also be an extraordinary case.

¶ 15 We first consider Rule 8.1. Rule 8.1 predates but somewhat parallels the "complex case" exception. Rule 8.1 provides that "[e]xtraordinary cases" may justify "the suspension of Rule 8." Ariz. R.Crim. P. 8.1(e). "Extraordinary" means "[b]eyond what is common or usual" or "[v]ery exceptional."

---

**2.** We reviewed the comments to the Arizona Supreme Court when this rule was proposed, and the comments are unrevealing.

Webster's II New College Dictionary 398 (2001). The judge must, as with the complex case rule, make findings of fact. In contrast to Rule 8.2(a), however, the determination that the case is extraordinary must be approved by the Chief Justice. *See* Ariz. R.Crim. P. 8.1(e). The comment to Rule 8.1 states that it "is intended to provide for unusually complicated cases or those cases in which there are an unusually large number of witnesses and/or exhibits...." Ariz. R.Crim. P. 8.1(e), cmt. The relationship between the "extraordinary case" and similar provisions is unclear. Rule 8.1 encompasses cases rendered complicated by evidence. Accordingly, a "complex" case may also be an "extraordinary" one, and could fall within either Rule 8.2(a)(3) or Rule 8.1(e).

¶ 16 Another Rule 8 exclusion, one that postdates Rule 8.2(a)(3), is similar. Arizona Rule of Criminal Procedure 8.4(c) allows the exclusion from speedy trial time of "[d]elays resulting from extension of the time for disclosure under Rule 15.6." Arizona Rule of Criminal Procedure 15.6(e) in turn allows extensions of the time for disclosure of "scientific evidence." DNA evidence is undoubtedly one type of such scientific evidence. This rule differs from Rule 8.2(a)(3) in important aspects. First, the Rule 8.4(c) exclusion requires the affidavit of an expert or laboratory representative that additional time is needed for testing, and must specify the additional time needed. *See* Ariz. R.Crim. P. 15.6(e). Second, the exclusion is mandatory: The court "shall" grant the extension unless the delay "resulted from dilatory conduct, neglect, or other improper reason...." Ariz. R.Crim. P. 15.6(e). Finally, a Rule 8.4(c) extension does not necessarily rest on the

inherent complexity of the evidence. The comment to this provision, adopted in 2003, states that it applies when an unavoidable backlog in a crime laboratory necessitates more time. Ariz. R.Crim. P. 8.4, cmt.[3] "Complexity" is not a word used in either Rule 8.4 or Rule 15.6. Obviously, however, case complexity could also be present when the situations encompassed by this rule exist.

¶ 17 The final speedy trial exception lies in Rule 8.5. That rule states that continuances are to be granted "only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." Ariz. R.Crim. P. 8.5(b). Such a continuance "may be granted only for so long as is necessary to serve the interests of justice." *Id.* The availability of continuances on these broad grounds suggests that a case that qualifies as complex under Rule 8.2(a)(3) could also qualify for relief available under Rule 8.5. Although Rule 8.5(b) continuances involve something extraordinary happening within the case, and Rule 8.2(a) designations involve the extraordinary nature of the case, the latter could cause the former. In addition, the comment to Rule 8.2(a)(3) states that its provisions and the "extraordinary circumstances" exception in Rule 8.5 are cumulative: "This subsection does not preclude application to the Supreme Court for suspension of the rules pursuant to Rule 8.5." Ariz. R.Crim. P. 8.2(a)(3), cmt. Both rules, however, require more than an ordinary bump in the procedural path to trial. A suspension of time pursuant to Rule 8.5 requires "extraordinary circumstances."

¶ 18 Although the foregoing rules somewhat overlap, they establish different re-

---

**3.** The 2003 committee comment to Rule 15.6(e) recognized that although in "most cases" scientific evidence will be ready "within the time periods of Rule 15," the occasional need for an extension of those time limits may arise because "forensic crime laboratories, despite the best intentions, are constrained by external circumstances...." Ariz. R.Crim. P. 15.6(e), cmt. Even public comment regarding the 2003 amendment to Rule 15.6(e) recognized that, despite the exercise of due diligence, both private and public crime laboratories may not be able to complete testing within the time limits prescribed by our *speedy trial rules. Rule 8 and Rule 15 Committee,* Committee's Revised Combined Petition to Amend Rules 15, 8.4 and 8.5 Arizona Rules of Criminal Procedure (May 13, 2003) (on file with the Clerk of the Arizona Supreme Court).

Although arguably more apt here than Rule 8.2(a)(3), Rule 15.6(e) does not save the superior court's ruling. No "affidavit from a crime laboratory representative or other scientific expert" was filed. Ariz. R.Crim. P. 15.6(e). No evidence was presented that the backlog was, in the words of the comment to the rule, "appropriate and not dilatory conduct or neglect." *Id.*, cmt. Finally, the record shows that the delay was not due solely to laboratory processing time, but in part to the State's delay in obtaining the sample for testing.

quirements to alter or extend speedy trial time limits. "Extraordinary circumstances" is not the same as a "complex case," but a complex case might cause extraordinary circumstances to be present. The rules differ but are not mutually exclusive.

¶ 19 A federal law is instructive because it authorizes a complex case exception similar to the Arizona rule. The federal Speedy Trial Act states that "[t]he factors, among others, which a judge shall consider in determining whether to grant a continuance" include "[w]hether the case is so unusual *or so complex,* due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(h)(8)(B)(ii) (2000) (emphasis added). This speedy trial exception was "intended by Congress to be 'rarely used,' and . . . is 'not a general exclusion for every delay.' " *United States v. Clymer,* 25 F.3d 824, 828 (9th Cir.1994) (quoting *United States v. Jordan,* 915 F.2d 563, 565 (9th Cir.1990)). It "is not to be routinely applied, and . . . it may not be invoked in such a way as to circumvent the time limitations set forth in the Act." *Clymer,* 25 F.3d at 829. Regarding DNA testing in particular, the federal courts distinguish between inherent delay in the testing process that justifies a continuance, and lack of diligence in obtaining and analyzing the evidence or the congested workload of the laboratory, which do not justify more time. *Compare United States v. Drapeau,* 978 F.2d 1072 (8th Cir.1992) (justified) *with United States v. Dog Taking Gun,* 7 F.Supp.2d 1118 (D.Mont.1998) (unjustified). Federal law

thus focuses on whether the delay is unavoidable.

¶ 20 We now measure the facts found by the superior court against our standard of "complex case." The superior court's findings are insufficient. Each finding relates not to the inherently complex nature of the type of case or the evidence involved, but to case-specific difficulties in obtaining the evidence desired by the State. This case presented run-of-the-mill discovery and evidentiary problems, not complexity.

¶ 21 The superior court's designation of complexity due to the presence of scientific evidence is insufficiently supported by the record.[4] First and foremost, the court did not find, and the State never argued, that the DNA evidence itself made this a complex case. For example, no suggestion was made that the type of biological sample was more difficult to analyze than the norm, that DNA analysis is inherently so time-consuming that the ordinary time limits cannot apply,[5] or that this case will involve a battle of expert opinion which requires additional time for analysis of evidence and discovery. Moreover, the State did not argue that it had inadequate time to prepare its case or that it could not proceed with the evidence that it had.

¶ 22 The mere fact that scientific evidence may be involved in a case does not automatically render it complex. Not all scientific evidence is so time-consuming to prepare or present that delay is necessary. That fact is recognized by the comment to Rule 15.6(e), which states that "in most cases" scientific evidence will be ready within normal time limits. Were it otherwise, Rule 8.4(c), which allows the exclusion of time only when it is

---

4. The evidence may not even be admissible. Indeed, this cuts against a "complex" designation. The judge cited the uncertainty whether the evidence would be admissible. If the evidence is inadmissible, the trial date need not be continued. The judge could have first answered the admissibility question, and then, if the evidence were admissible, determined whether that rendered the case extraordinary. The evidence is other acts evidence, not evidence relating directly to the conduct charged. The trial judge has not yet determined whether the evidence is admissible under Arizona Rules of Evidence 403 and 404(c).

5. Private laboratory DNA testing of biological samples for paternity purposes requires only a few days. *See* http://www.dnat estingcentre.com (last visited May 27, 2005) (DNA paternity results in as early as five days to as long as two weeks). Governmental forensic laboratories do not publish similarly accessible information on the Internet. The record reveals nothing in the methodology of DNA analysis that necessitates the sixty-day delay the State sought.

proved that laboratory delay is unavoidable, would be superfluous.

¶ 23 DNA evidence is not so different from other scientific evidence that it automatically avoids the speedy trial rule. If the mere presence of DNA evidence were enough, then the State would get a "pass" from compliance with the rule in every case in which the State decided to introduce DNA evidence. That surely is not the intent of the rule, as revealed by both the language of the rule and the qualifying language contained in the rule's comments. The text of Rule 8.2(a)(3) does not indicate that every case involving DNA evidence qualifies for longer speedy trial limits. Moreover, the comment to Rule 8.2(a)(3) acknowledges that *"certain cases will be more complex than others"* and "such cases *may* include those involving DNA...." Ariz. R.Crim. P. 8.2(a)(3), committee cmt. (emphasis added). The comment recognizes that not all cases involving DNA evidence will be sufficiently "complex" enough to extend the threshold speedy trial time limits. *See* Ariz. R.Crim. P. 8.2(a)(3), committee cmt. Therefore, the mere presence of DNA evidence does not make a case complex.

¶ 24 Although DNA evidence is hardly routine, it is commonplace enough today that its mere presence does not invariably make a case extraordinary, much less extraordinarily complex. The admissibility of DNA analysis is no longer an issue. *See State v. Bible,* 175 Ariz. 549, 582, 858 P.2d 1152, 1185 (1993) (DNA sample matching meets *Frye* test for admissibility); *State v. Garcia,* 197 Ariz. 79, 3 P.3d 999 (App.1999) (statistical formulas utilized to calculate likelihood ratios used to interpret mixed DNA samples meets *Frye* test for admissibility); *United States v. Ewell,* 252 F.Supp.2d 104, 111–12 (D.N.J.2003) (noting numerous state appellate court cases have recognized the reliability of certain DNA testing as "virtually beyond reproach."). Although the methods of *applying* the science—such as handling the biological samples and interpreting the graph—can be contested, the scientific basis of such tests are no longer subject to challenge. *See State v. Lucero,* 207 Ariz. 301, 303, 85 P.3d 1059, 1061 (App.2004) (once accepted, scientific evidence of the same type is not subject to *Frye* hearing but may still be challenged in its application, such as test procedures and interpretation of results). Moreover, the State argued only that there had been delay in obtaining the DNA evidence, not that the nature of the evidence rendered the preparation or presentation of the case difficult. This is a showing of case-specific evidentiary difficulty, not complexity in the *type* of evidence. Rule 8.2(a)(3) is inapplicable to the facts found by the superior court.

¶ 25 The second reason that the court's complex case designation is insufficiently supported is that the State's evidence shows that the delay was *not* caused by complexity. Laboratory delay does not constitute qualifying complexity. A laboratory backlog may result from the time needed to test and the number of samples awaiting tests, but it does not render the case "complex." Another rule, Rule 8.4(c), is available in such cases. But the State did not qualify for Rule 8.4(c) relief because it failed to present the required proof of the delay pursuant to Rule 15.6(e).

¶ 26 The State's delay in obtaining a sample for DNA testing also was not caused by complexity. The detective indicated that he had not promptly sought the evidence because he had been busy. The inability of the investigating officer to secure the DNA sample due to his routine workload does not constitute complexity. The superior court cited "late discovery," "where the child was," an uncooperative victim, and "incomplete scientific testing" as reasons why this is a complex case. However, when asked why he did not "go down and see" the alleged victim in the other case in order to obtain the DNA samples sought, the detective in charge of petitioner's case answered that he "didn't have the opportunity to" because he has "other cases, things going on, court dates." The investigating detective's workload does not make this case "complex." [6]

6. Ordinary court calendar congestion is not an acceptable reason for deviating from the ordinary Rule 8 time limits. *See* Rule 8.4(d) (stating that congestion must be due to "extraordinary

¶ 27 Although we hold the court's order did not support a designation of "complexity," it may well be that another exception to the speedy trial rule is justified. For example, under Rule 8.5(b), an extension is allowed when "extraordinary circumstances exist and [a] delay [in prosecution] is indispensable to the interests of justice." In addition, with appropriate proof, a continuance may also be allowed by Rule 8.4(c), which allows delays "resulting from extension of the time for disclosure." However, those questions are not presented to us because they were not ruled upon by the superior court. Thus, they remain open in this case.

¶ 28 Accordingly, we accept jurisdiction and grant relief from the order designating this as a complex case. A "complex case" is a case so complicated, by virtue of its nature or because of the evidence required, that the ordinary limits for the time to trial are insufficient and must be extended so as to afford the party more time to prepare in order to fairly and fully present its case. Because this is not a "complex case," we grant relief from the court's order. Our holding, however, does not preclude the court from granting a continuance on the basis of another rule if it properly finds that the circumstances justify it.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and JOHN C. GEMMILL, Judge.

circumstances" and suspension of rules must be approved by the Chief Justice). Nor is unexplained laboratory backlog. *See* Ariz. R.Crim. P. 8.4(c), cmt. Ordinary congestion in the prosecutor's or investigating police officer's caseload is also a dubious reason to ignore the speedy trial limits, at least when, as here, nothing other than the usual press of business causes the delay.