NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JERRY LEON PATTON, *Appellant.*

No. 1 CA-CR 12-0798
FILED 3-10-2015

Appeal from the Superior Court in Maricopa County
No. CR2011-005333-001 DT
The Honorable Susanna C. Pineda, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas K. Baird
*Counsel for Appellant*

Jerry Leon Patton, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

---

**C A T T A N I,** Judge:

¶1        Jerry Leon Patton appeals his convictions and sentences for three counts of sexual conduct with a minor. Patton's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), certifying that he found no arguable question of law that was not frivolous and asking the court to review the record for fundamental error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999). Patton subsequently filed a supplemental brief. After reviewing the record, we affirm Patton's convictions and sentences, but vacate the superior court's order requiring Patton to pay the cost of required DNA testing.

**FACTS AND PROCEDURAL BACKGGROUND[1]**

¶2        In 1991, Patton began dating a woman in Illinois and moved into the home she shared with her son and two daughters. The victim (the older daughter) was eight years old when Patton moved in, and he quickly became a father figure to her. When the victim was 11 or 12, Patton began sexually abusing her on a regular basis. At age 13, the victim became pregnant as a result of sexual intercourse with Patton. The victim's mother testified that Patton admitted having sex with the victim and impregnating her. A paternity test confirmed that Patton was the father of the victim's child.

¶3        Patton and a friend brought the pregnant victim to Phoenix for a couple of weeks.[2] At the hotel in which the three of them stayed, Patton engaged in sexual conduct with the victim. Throughout the victim's

---

[1]      We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Patton. *State v. Fontes*, 195 Ariz. 229, 230, ¶ 2, 986 P.2d 897, 898 (App. 1998).

[2]      Although Patton and the victim's family moved several times over the years, all three charged crimes occurred in Maricopa County.

pregnancy, Patton continued to have sex with her. The victim's mother and sister eventually joined her and Patton in Phoenix, where they continued to live for several years.

**¶4** To explain the victim's pregnancy, Patton and the victim's mother fabricated a story that the victim had been raped at a campsite. The victim's mother and Patton decided to raise the child as their own, and a few years later, the victim's mother gave birth to her own son with Patton. Throughout this time, Patton continued to have sex with the victim until she was seventeen years old.

**¶5** The victim's mother and Patton ended their relationship in 2010, leading to litigation over who should have custody of their biological child, as well as the victim's child. Patton was awarded full custody of both boys and an order of protection was issued against the victim's mother and her daughters. It was during this time period that the victim reported Patton's extensive sexual abuse. In early 2011, Patton was arrested and charged with three counts of sexual conduct with a minor.

**¶6** Before trial, the State moved under Rule 404(c) of the Arizona Rules of Evidence to admit evidence of Patton's other acts of sexual conduct with minors. Specifically, the State sought to admit (1) a 1978 Indiana incident/conviction for sexual conduct with a 15-year-old girl, (2) uncharged incidents of sexual conduct with the victim's younger sister, and (3) uncharged out-of-state incidents of sexual conduct with the victim. Patton objected, and in a detailed minute entry order, the court denied the Rule 404(c) motion as to the 1978 incident, but granted the State's request to introduce evidence of the uncharged incidents with the victim and with her younger sister.

**¶7** After a ten-day jury trial, Patton was convicted on all three counts. The court sentenced Patton to consecutive presumptive terms of 20 years on each count. The court credited Patton with 695 days of presentence incarceration credit.

**¶8** Patton timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and -4033.[3]

---

[3] Absent material revisions after the relevant date, we cite a statute's current version.

**DISCUSSION**

¶9 We have read and considered counsel's brief and Patton's supplemental brief, and we have reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find none.

**I.    Admission of 404(c) Evidence.**

¶10 Patton contends the court erred by granting a portion of the State's Rule 404(c) motion and thus allowing into evidence testimony regarding uncharged sexual acts with the victim and her younger sister.

¶11 In cases involving sexual offenses, evidence of a defendant's "other crimes, wrongs, or acts may be admitted by the court if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c); *see State v. Herrera*, 232 Ariz. 536, 545, ¶ 22, 307 P.3d 103, 112 (App. 2013). This type of evidence is admissible under Rule 404(c) upon a showing that:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.
>
> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403.

¶12 Here, the court found sufficient evidence to support the admission of the uncharged incidents involving the victim and those involving her younger sister. Statements by the victim's younger sister (that were corroborated by the victim and her mother) supported the court's conclusion that the younger sister's allegations were credible, and that they evidenced an aberrant sexual propensity for sexual activity with young girls. Similarly, the interviews with the victim, a corroborating statement from her childhood friend, Patton's admission to fathering the victim's child, and DNA results showing that Patton is the father further supported the court's conclusion. As the court noted, the evidence showed a continuous pattern of sexual abuse, not remote in time and not otherwise inadmissible under Rule 403. Accordingly, the superior court did not err by allowing admission of this other act evidence.

**¶13**        Although the victim's sister (by surprise to the State) testified beyond the scope allowed by the Rule 404(c) ruling, the court instructed the jury to disregard that portion of the testimony and admonished the State to keep its questioning within the permitted scope of the ruling.  The court denied Patton's motion for mistrial, a ruling we review for an abuse of discretion.  *See State v. Trotter*, 110 Ariz. 61, 65, 514 P.2d 1249, 1253 (1973).

**¶14**        The improper testimony at issue included sexually explicit information about alleged acts between Patton and the victim's sister.  Given the numerous other graphic details described by the victim in this case, the superior court did not abuse its discretion by finding that this portion of the testimony did not unfairly prejudice Patton.  Instructing the jury to disregard the witness's statement rather than granting a mistrial was within the court's discretion.  *See State v. Dann*, 205 Ariz. 557, 570, ¶ 46, 74 P.3d 231, 244 (2003) (reiterating that jurors are presumed to follow the court's instructions).

## II.    Defendant's Presence.

**¶15**        Patton was present and represented by counsel at all critical stages of the proceedings against him.  Contrary to his assertion, Patton did not have a right to be present at the grand jury hearing.  *See State v. Meek*, 9 Ariz. App. 149, 153, 450 P.2d 115, 119 (App. 1969) ("The grand jury has always been a secret, non-public affair, and . . . . [it is] not mandatory that the defendant be present or even be apprised that a hearing is being conducted.").  Therefore his absence did not result in a denial of due process.

**¶16**        "When reviewing a defendant's absence from preliminary hearings, the court should examine the record as a whole and determine 'whether [the] accused suffered any damage by reason of his absence.'" *Dann*, 205 Ariz. at 571–72, ¶ 53, 74 P.3d at 245–46 (citation omitted).  Although Patton was absent for several pretrial hearings, his counsel was present at each hearing and waived Patton's presence each time, other than at a complex case designation conference.  Although defendants have a right "to be present at every stage of the trial," Ariz. R. Crim. P. 19.2, this right only applies to open proceedings where the defendant's presence substantially relates "to the fullness of his opportunity to defend against the charge." *Dann*, 205 Ariz. at 571, ¶ 53, 74 P.3d at 245 (citation omitted).

**¶17**        The minute entry for the complex case designation conference does not indicate that Patton's counsel formally waived his client's presence.  But Patton provided no evidence, other than self-serving

statements in his supplemental brief, that his brief absence prejudiced his case. Patton was present for the entire trial, including for the verdict and sentencing. Accordingly, Patton has not established reversible error based on his absence from the complex case designation conference.

## III.    Speedy Trial and Continuances.

**¶18**        A defendant must be tried within 270 days of arraignment when there is a complex case designation. Ariz. R. Crim. P. 8.2(a)(3). Here, the superior court granted a total of seven continuances prior to trial and excluded 391 days for Rule 8 purposes. The State requested four of these continuances (210 days excluded) and all were granted with Patton's agreement to waive time. Patton nevertheless claims that the continuances and subsequent exclusions of time violated his right to a speedy trial.

**¶19**        Patton was arraigned on January 27, 2011, and his trial ended on November 15, 2012. Although Patton alleges that he was arraigned a week prior, the record does not support this assertion. Between the arraignment and the end of trial, 658 days elapsed. After subtracting the time Patton waived (391 days), the total number of days between Patton's arraignment and the end of trial was 267 days, which was within the 270-day limit.

**¶20**        This court will not find an abuse of discretion in granting a trial continuance unless a defendant establishes prejudice under the specific facts of the case. *State v. VanWinkle*, 230 Ariz. 387, 290, ¶ 7, 285 P.3d 308, 311 (2012); *State v. Spreitz*, 190 Ariz. 129, 136, 945 P.2d 1260, 1267 (1997). Here, Patton failed to establish any prejudice from the continuances and exclusion of time. Many of the continuances were made either by motion from defense counsel or pursuant to an agreement by the parties. Although Patton now argues that he did not authorize these continuances, the evidence is to the contrary.

**¶21**        Finally, contrary to Patton's assertions, Rule 8.5(b) does not set forth a maximum amount of time for which a continuance may be granted. Rather, the rule states that "[a] continuance may be granted only for so long as is necessary to serve the interests of justice." Ariz. R. Crim. P. 8.5(b). Given defense counsel's agreement to the continuances, as well as the State's explanation for the requests, the court did not err by granting the continuances. Accordingly, Patton's right to a speedy trial was not violated.

## IV.    Complex Case Designation.

**¶22**        We review a court's decision to designate a case as complex for an abuse of discretion. *Snyder v. Donato*, 211 Ariz. 117, 120, ¶ 7, 118 P.3d 632, 635 (App. 2005). A complex case is "so complicated, by virtue of its nature or because of the evidence required, that the ordinary limits for the time to trial are insufficient and must be extended to afford more time to prepare so that the case can be fairly and fully presented." *State v. Wassenaar*, 215 Ariz. 565, 570, ¶ 9, 161 P.3d 608, 613 (App. 2007) (quoting *Snyder*, 211 Ariz. at 120, ¶ 12, 118 P.3d at 635).

**¶23**        Prior to trial, Patton's counsel requested the complex case designation, citing the following as grounds: (1) the case involved multiple counts of sexual conduct with minors, occurring in 1994 or 1995, (2) the offenses were class 2 felonies alleged as dangerous crimes against children, (3) a busy trial schedule prevented defense counsel from reviewing extensive discovery materials, (4) defense counsel anticipated having to hire an investigator, and (5) potential witnesses for both the State and the defense lived out of state. Although the motion was untimely given the superior court's order that all pretrial motions be filed at least 20 days before the final trial management conference, the court nevertheless acted within its discretion in considering the motion. *See State v. Colvin*, 231 Ariz. 269, 271, ¶ 7, 293 P.3d 545, 547 (App. 2013) ("Trial courts have discretion to extend the time for filing motions and, implicitly, to hear untimely motions."). Without objection from the State, the court granted the motion to designate the case as complex.

**¶24**        Because Patton requested the complex case designation, he invited any conceivable error from that designation, and he waived appellate review relating to that issue. *See State v. Logan*, 200 Ariz. 564, 565–66, ¶¶ 8–9, 30 P.3d 631, 632–33 (2001). Moreover, Patton does not claim, nor is there any evidence in the record, that the complex case designation prejudiced his case. Rather, Patton's attorney requested the designation to better prepare for trial. Although defense counsel's busy schedule should have no bearing on whether a case is complex, *cf. Snyder*, 211 Ariz. at 123, ¶¶ 25–26, 118 P.3d at 638 (investigator's heavy workload or laboratory's backlog is not a valid basis for complex designation), the age of the events underlying the indictment and the location of material witnesses out of the state supported the court's decision to designate the case as complex. Accordingly, Patton has not established error.

## V. Ineffective Assistance of Counsel.

¶25    Patton claims his counsel was ineffective.  But ineffective assistance of counsel claims must be raised in a post-conviction proceeding under Arizona Rule of Criminal Procedure 32, and this court will not consider such claims brought on direct appeal "regardless of merit." *Spreitz*, 202 at 3, ¶ 9, 39 P.3d at 527; *State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20, 153 P.3d 1040, 1044 (2007).  We therefore do not address Patton's claims.

## VI. Insufficient *Donald* Advisement.

¶26    The court gave Patton a *Donald*[4] advisement at a pretrial conference and informed him of a plea offered by the State.  The court initially told Patton that if he rejected the plea and was convicted, he would be exposed to mandatory consecutive sentences of 35 years to life on each of the three counts.  The prosecutor then informed the court that, because the victim was 13 or 14 years old (rather than 12 or under), the sentencing range for each count was less.  The court corrected itself and told Patton that, if convicted of all three counts, he would be exposed to "13 to 27 with a presumptive being 20 but mandatory/stacked," yielding a minimum possible term of 39 years, and a maximum of 81 years.

¶27    Although the court initially misstated Patton's potential sentence, the court corrected itself, and Patton indicated he understood the plea offer and the potential sentence if he rejected the plea and was convicted as charged.  Patton had the opportunity for further clarification, but indicated that he understood the plea offer.  Accordingly, we find no error.

## VII. Prosecutorial Misconduct.

¶28    We review Patton's claims of prosecutorial misconduct for fundamental, prejudicial error because he did not object to the alleged misconduct at trial.  *See State v. Henderson*, 210 Ariz. 561, 567–68, ¶¶ 19–20, 115 P.3d 601, 607–08 (2005).  "To warrant reversal, the prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'"  *State v. Newell*, 212 Ariz. 389, ¶ 61, 402, 132

---

4    *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193 (App. 2000) (requiring an on-the-record determination that a defendant has been advised of any proposed plea agreements).

P.3d 833, 846 (2006) (citation omitted). We find no such misconduct in this case.

**¶29** Patton contends the prosecutor made several arguments that were "false and self-serving" in support of the State's Rule 404(c) motion. He argues that the prosecutor lied about facts relating to Patton's prior conviction and about other sexual acts with the victim and her sister. Patton further contends that he was not timely informed of the State's plea offer.

**¶30** After reviewing the record, we find no evidence of false statements by the prosecutor. And Patton's attorney acknowledged in the pretrial conference statement that a plea offer had been made, and Patton indicated that he understood the terms of the offered plea at the *Donald* hearing. Patton has not established prosecutorial misconduct, much less fundamental error resulting from such misconduct.

## VIII. Expert Testimony.

**¶31** Patton contends the court erred by allowing an expert who was unaware of the facts underlying the case to testify about general indications of sexual abuse in children. The Arizona Supreme Court has held that "expert testimony about general behavior patterns of child sexual abuse victims may help the jury understand the evidence." *State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶¶ 14–15, 325 P.3d 996, 1000 (2014). Even though the expert did not have personal knowledge of the case, under Arizona Rule of Evidence 702(a), the testimony was appropriate to help the jury to understand possible reasons for the victim's delayed and inconsistent reporting. *Id.*

## IX. Sufficiency of the Evidence.

**¶32** Patton asserts that the victim's sister's testimony only established limited touching. However, she clearly stated that Patton regularly had sexual intercourse with her while she was a minor.

**¶33** Patton also challenges the victim's mother's testimony and argues that she did not have personal knowledge of the events about which she testified. Because Patton did not raise this objection at trial, we review for fundamental, prejudicial error only. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. Patton has not established error, much less prejudicial error given corroborating testimony from the victim and the victim's sister regarding their personal knowledge of being sexually assaulted by Patton for over a decade.

## X.     Improper Search.

¶34     Patton argues that the buccal swab taken from the victim's son (proving Patton's paternity) was done without appropriate parental consent. Even if his contention had merit, Patton was not prejudiced by the resulting DNA evidence because his paternity was never in question; he admitted to being the child's father prior to trial, as well as during his trial testimony. Patton in fact asserted at trial that the victim became pregnant by being artificially inseminated with his semen.

## XI.     Defendant's Right to Testify.

¶35     Although Patton testified on his own behalf, he contends that he was prevented from testifying about various precluded matters. Because Patton did not raise this objection at trial, we review for fundamental, prejudicial error only. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Ariz. R. Evid. 401. But "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 403.

¶36     Patton contends that he was prevented from testifying about the victim's mother's suicide attempts and her involvement with child protective services, as well as about the victim's sister's alleged criminal behavior in the family's home. He has not established, however, why these allegations were relevant, and nothing in the record suggests their absence resulted in fundamental error.

## XII.     Statute of Limitations.

¶37     Contrary to Patton's assertions, the record reflects that he was convicted and sentenced under the appropriate statutes, within the prescribed seven-year statute of limitations. *See State v. Jackson*, 208 Ariz. 56, 65, ¶ 30, 90 P.3d 793, 802 (App. 2004) ("[T]he seven-year limitation period under [A.R.S. § 13-107(B)] begins 'when the authorities know or should know in the exercise of reasonable diligence that there is probable cause to believe a criminal [offense] has been committed.'") (citation omitted). Although Patton committed the crimes in 1995 and 1996, they were not brought to the authorities' attention until the victim came forward in 2010. Therefore, Patton was prosecuted within the appropriate statute of limitations period. To the extent Patton challenges the applicability of

procedural rules that were enacted or modified after the time of the offenses, such procedural rules governing the conduct of trial (rather than those establishing substantive law) may be applied retroactively without violating *ex post facto* prohibitions. *See, e.g., State ex rel. Romley v. Rayes*, 206 Ariz. 58, 62, ¶ 13, 75 P.3d 148, 152 (App. 2003).

## XIII. Improper Order for Payment.

**¶38** At sentencing, the superior court ordered, pursuant to A.R.S. § 13–610, that Patton "submit to DNA testing for law enforcement identification purposes and pay the applicable fee for the cost of that testing." In *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013), this court held that A.R.S. § 13–610 does not authorize the sentencing court to require the convicted person to pay for DNA testing. We therefore vacate the portion of the sentencing order requiring Patton to pay the cost of DNA testing.

## CONCLUSION

**¶39** The record reflects that the superior court afforded Patton all his rights under the constitution and our statutes, and that the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The court conducted appropriate pretrial hearings, and the evidence presented at trial, as summarized above, was sufficient to support the jury's guilty verdict. Patton's sentence falls within the range prescribed by law, with proper credit given for presentence incarceration. We therefore affirm Patton's convictions and sentences, as modified above.

**¶40** After the filing of this decision, defense counsel's obligations pertaining to Patton's representation in this appeal will end after informing Patton of the outcome of this appeal and his future options. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Patton shall have 30 days from the date of this decision to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama