NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GUSTAVO MORALES LOZANO, *Appellant.*

No. 1 CA-CR 23-0041
FILED 2-22-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-143082-001
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Law Office of Stephen M. Johnson, Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Maria Elena Cruz and Judge Cynthia J. Bailey joined.

---

**M c M U R D I E**, Judge:

¶1        Gustavo Morales Lozano appeals his convictions and sentences for molestation of a child, child abuse, and sexual abuse. He argues that there was insufficient evidence to support the molestation conviction. He also argues that his speedy trial rights were violated. *See* Ariz. R. Crim. P. ("Rule") 8. We find no error and affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2        In 2020, Lozano shared a home with his wife, Rosa; his two children, Erika and Alan; and his wife's sister, Ophelia.[2] At the time of the incident, Erika was about eight years old, Alan was three, and Ophelia was around twenty-two.

¶3        Rosa testified that she has a learning disability and has never had a job. Ophelia also has a learning disability. She has not lived independently and testified that she does not know how to care for herself, buy groceries, go to the bank, or manage money. A neighbor stated that Ophelia functioned "with the mind of a seven-year-old." But Ophelia worked at a preschool and testified that she helped around the house by washing the dishes and babysitting Erika and Alan.

¶4        In October or November 2020, Ophelia talked with her upstairs neighbor about something that upset her. Following the conversation, the neighbor was concerned and contacted the police. The neighbor testified that Ophelia was "nervous" and "crying" when they spoke about what had happened. Lozano was arrested and charged with

---

[1]        We view the facts in the light most favorable to sustaining the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]        We use pseudonyms to protect the identities of children and victims.

two counts of molestation of a child, one count of child abuse, and three counts of sexual abuse.

¶5        At the trial, Ophelia testified about an incident in the kitchen where Lozano touched her breasts and made her feel uncomfortable. She told Lozano that she "didn't like it." She also testified that he bit her breast under her shirt, but she could not remember whether the two events were on the same day. She again felt uncomfortable and told Lozano, "no."

¶6        Ophelia testified about another incident where she was asleep and woke to Lozano's presence in the room "over [her]." She recounted that she "got scared" and then "felt his hand" in or on her vagina. She told Lozano that she "felt uncomfortable" but did not remember whether Lozano replied. When asked, Ophelia testified that she did not remember whether Lozano asked for permission to touch her.

¶7        Ophelia also testified about incidents involving the children. She testified that "[m]ore than one time" she would ask for something from Lozano—for example, "a snack"—and "he would tell [her] that [she] would have to kiss [Alan's] penis." She explained that "[Lozano] would tell [Alan] to stand up on the couch . . . with his underwear down" and that she would only be permitted to get a snack after she kissed Alan's penis. She testified that, on another occasion, Lozano told Erika "to pull down her . . . underwear" and to "stick her butt out" and told Ophelia to kiss Erika's butt if she wanted "chips or a snack." Ophelia said she obeyed Lozano because she "thought [she] would get in trouble" if she did not follow the rules. When asked what Ophelia thought would happen if she did not obey, she responded she feared she "would get kicked out." She also testified that Lozano had told her that "no one would believe [her] if [she] told" anyone about the incidents.

¶8        Rosa testified that "more than one time" she "heard [Lozano] tell [Ophelia] to kiss [Alan] on his penis," and she once saw Ophelia do so. She explained that "[Ophelia] wanted a bag of chips," and so Lozano told her to first kiss Alan "in the private part." She testified that Ophelia said nothing but "pulled [Alan's] . . . pants down a little bit and kissed him in the private." She denied seeing or hearing inappropriate contact between Lozano and Erika.

¶9        The children both testified at the trial, but neither corroborated the incidents alleged by Ophelia.

¶10        Lozano testified that the Alan incidents were a "game" that Ophelia had made up. According to Lozano, Ophelia and Alan were

playing and invited Lozano to join. When he asked how he should play with them, "they said, oh, you should, you know, offer—offer potato chips to [Ophelia]." Lozano explained that Ophelia "would tell [Alan], you know, give me chips and—and I'll—I'll kiss your [penis]." He testified that Ophelia would also offer to kiss Erika in exchange for "juice or soda" or "sweets." When asked, Lozano said that he thought the game was "wrong" and "wasn't okay," but he played along when Rosa expressed displeasure that he was refusing to play with Ophelia and the kids.

¶11        Lozano admitted to having "pinched" Ophelia on her breasts and touched her vagina. But he explained that he had done so after Ophelia "dared [him]" to, and because "she said that if [he] didn't play with her like that then she was going to tell [his] wife that [he] had been molesting her all along." He claimed that Ophelia used "bad language" and was "laughing" throughout the encounters.

¶12        The jury found Lozano guilty of one count of molestation of a child, one count of child abuse, and two counts of sexual abuse. The superior court sentenced Lozano to imprisonment for 15.5 years—the minimum ten years' imprisonment for the molestation count and the presumptive terms for the other counts, all running consecutively. *See* A.R.S. §§ 13-705(F), 13-702(D).

¶13        Lozano appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

### A.    Sufficient Evidence Supports the Child Molestation Conviction.

¶14        Lozano challenges the sufficiency of the evidence supporting his child molestation conviction. We review the sufficiency of the evidence *de novo* and consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶¶ 15-16 (2011) (citation omitted).

¶15        Under A.R.S. § 13-1410(A), "A person commits molestation of a child by intentionally or knowingly engaging in *or causing a person to engage in* sexual contact . . . with a child who is under fifteen years of age." (Emphasis added.) Lozano argues that no rational trier of fact could find that Lozano *caused* Ophelia to engage in sexual contact with Alan. First, he notes that "[t]he court did not instruct the jury on the definition of cause or causing." He argues "[t]here was no testimony about threats of force or

4

coercion." He concludes, without legal citation, that "the enticement of a bag of chips" without "force, threat[,] or coercion" is "simply not enough" to prove causation. We disagree.

¶16        A.R.S. § 13-203(A) provides:

Conduct is the cause of a result when both of the following exist:

1. But for the conduct the result in question would not have occurred.

2. The relationship between the conduct and result satisfies any additional causal requirements imposed by the statute defining the offense.

We have held that merely giving verbal directions can be enough to satisfy the "cause" element of the child molestation statute. *See, e.g.*, *State v. Brock*, 248 Ariz. 583, 592, ¶ 24 (App. 2020) (Defendant and victim had only met online, but there was sufficient evidence to sustain a child molestation conviction when defendant pressured the child victim to masturbate.); *State v. Marshall*, 197 Ariz. 496, 504, 506, ¶¶ 29, 41 (App. 2000) ("[N]otwithstanding the lack of direct physical contact with the molester," molestation conviction was upheld when the victim performed acts "at the direction of an adult."). A cause need not involve "force, threat[,] or coercion"; a power imbalance between the parties can suffice. *Cf. Brock*, 248 Ariz. at 588, ¶ 8 (Court rejected defendant's claim that he had not "caused" the 13-year-old victim to engage in sexual activity because their relationship was "consensual.").

¶17        Here, the State presented testimony that Ophelia could not care for herself and that she believed she "would get kicked out" if she disobeyed Lozano. The State also provided evidence that Lozano had sexually abused Ophelia and told her that "no one would believe [her] if [she] told" anyone about the incidents. From these facts, a reasonable jury could infer that Lozano's directions were the "cause" of her actions.

¶18        In short, the State provided "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67 (1990) (citation omitted). And though Lozano's testimony challenged whose idea it was for Ophelia to kiss Alan inappropriately, the resolution of conflicting testimony is within the purview of the jury. *See State v. Cid*, 181 Ariz. 496, 500 (App. 1995) ("The finder-of-fact, not the appellate court, weighs the evidence and determines the credibility of witnesses.").

**¶19** Because the State provided substantial evidence to demonstrate that Lozano caused Ophelia to engage in sexual conduct with Alan, we will not disturb the jury's verdict.

## B. The Superior Court Did Not Abuse Its Discretion by Granting Continuances.

**¶20** We review the superior court's Rule 8 ruling for an abuse of discretion. *State v. Spreitz*, 190 Ariz. 129, 136 (1997); *see* Ariz. R. Crim. P. 8. Appellants must show resulting prejudice to prevail on a Rule 8 claim. *See Spreitz*, 190 Ariz. at 136. "Prejudice under Rule 8 occurs if the defendant shows that the delay impairs his or her ability to defend against the State's charges." *State v. Leota*, 107 Ariz. Cases Dig. 40, 46, ¶ 27 (App. 2023). Moreover, defendants must assert speedy trial rights under Rule 8. *See Spreitz*, 190 Ariz. at 138 (cleaned up) ("[D]efendants may [not] wait . . . and then claim a Rule 8 violation after it is too late for the trial court to prevent the violation.").

**¶21** Lozano did not make a timely motion or objection about his constitutional or Rule 8 speedy trial rights. We, therefore, review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). Under fundamental error review, a defendant must show: (1) trial error exists, and (2) the error is fundamental, meaning the error "went to the foundation of the case," "took from the defendant a right essential to his defense," or "was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

**¶22** Lozano develops no argument that the delay in the proceedings caused him prejudice. In his brief, he only states that "the Judge granted several continuances over the objection of the defendant" but cites only his statement at sentencing, where he alleged (for the first time) that his speedy trial rights had been violated. Because he does not explain how the delay impaired his ability to defend against the charges, *see Leota*, 107 Ariz. Cases Dig. at 46, ¶ 27, Lozano fails to establish prejudice.

**¶23** And the record betrays Lozano's claim that "the Judge granted several continuances over the objection of the defendant." The court *sua sponte* rescheduled one trial management conference because of extraordinary circumstances, and the State requested one continuance, to which Lozano did not object. On the other hand, the record brims with granted continuances requested by Lozano.

**¶24** Lozano also fails to identify which Rule 8-time limit was violated. Lozano was arraigned on December 1, 2020, and his trial did not

begin until October 2022, beyond the prescribed limits under Rule 8. *See* Ariz. R. Crim. P. 8.2(a)(1). But a court can extend the time limits under Rule 8.5, which provides for trial continuances. Ariz. R. Crim. P. 8.2(d). In its last pretrial order granting a continuance, the court made the requisite findings under Rule 8.5, ruled it would "grant no further continuances," and determined the last day for trial was November 9, 2022. The trial was completed by November 2.

**¶25**      We find no error because there was no violation of Rule 8-time limits and no prejudice to Lozano's defense.

**¶26**      Finally, Lozano mentions that the right to a speedy trial is "both constitutional and statutory." *See Snyder v. Donato*, 211 Ariz. 117, 118, ¶ 8 (App. 2005). But aside from citation to speedy trial standards, Lozano does not develop a separate constitutional argument. Because Rule 8 grants stricter speedy trial rights than those provided by the Sixth Amendment, *see State v. Tucker*, 133 Ariz. 304, 308 (1982), Lozano's constitutional argument also fails.

**CONCLUSION**

**¶27**      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA