NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DAVID ALLEN LEARY, *Appellant*.

No. 1 CA-CR 14-0488
FILED 5-24-2016

Appeal from the Superior Court in Maricopa County
No.  CR 2013-002001-002
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By W. Scott Simon
*Counsel for Appellee*

Ballecer & Segal, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kenton D. Jones joined.

---

**O R O Z C O**, Judge:

¶1 David Allen Leary appeals his convictions for conspiracy to commit possession of narcotic drugs for sale, sale or transportation for sale of marijuana, and possession for sale of cocaine. Leary argues the trial court erred when it: (1) held the State did not violate Leary's right to a "speedy trial;" (2) held the State did not engage in prosecutorial vindictiveness; (3) denied Leary's motion to sever; (4) admitted testimony of two law enforcement witnesses; and (5) denied Leary's motion for mistrial based on juror misconduct. For the following reasons, we affirm Leary's convictions.

**FACTS AND PROCEDURAL HISTORY**

¶2 The State indicted Leary in a 2011 case that is not before us (the 2011 case).[1] For reasons we address in more detail below, the State re-indicted Leary in 2013 to add an additional count and the trial court dismissed the 2011 case. A jury convicted Leary as charged in the 2013 case and the trial court sentenced him to an aggregate term of 9.25 years' imprisonment. Leary timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031 and -4033 (West 2016).[2]

---

[1] The State asserts that this court may take judicial notice of the records of the Superior Court. *See State v. Valenzuela*, 109 Ariz. 109, 110 (1973). The State did not provide an appendix with the numerous documents it cited from the 2011 case, which would have aided this court in its consideration of this matter.

[2] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

I.      **The Denial of the Right to a Speedy Trial**

¶3          Leary argues the State denied him his right to a speedy trial under Rule 8.2, Arizona Rules of Criminal Procedure.  Specifically, Leary argues the State dismissed the 2011 case and re-indicted him in 2013 to avoid the impending time limit in the 2011 case.  *See* Ariz. R. Crim. P. 8.2.a.

       A.      **Background**

¶4          The State indicted Leary and sixty-three other defendants in a 226-count indictment in the 2011 case.  Within that indictment the State charged Leary, among other things, with conspiracy to commit possession of narcotic drugs for sale and possession for sale of cocaine.  The State re-indicted Leary and the four remaining codefendants in the instant case on April 8, 2013.  The 2013 indictment included the original charges against Leary plus one new count of sale or transportation for sale of marijuana.

¶5          The minute entry from an April 15, 2013 conference in the 2011 case noted that the last day to begin trial was May 20, 2013.  At that conference, the State informed the trial court that the State had re-indicted Leary and the remaining codefendants.  The State made an oral motion to dismiss the 2011 case but Leary asked the trial court to direct the State to file a written motion.  The trial court did not rule on the oral motion to dismiss.

¶6          The trial court held a status conference in the 2011 case a week later on April 22, 2013.  This was supposed to be the day trial started.  The transcript of that conference reflects that the State again informed the court that it had re-indicted the remaining defendants.  The State further argued it was now necessary to continue the 2011 case because one of Leary's codefendants was still undergoing a competency evaluation.  Leary objected to a continuance and argued he was ready to go to trial.  The court continued the trial for thirty days because of the codefendant's Rule 11 proceeding.

¶7          The trial court held a complex case management conference in the 2011 case on May 14, 2013.  On that date the court scheduled various matters, including a settlement conference, excluded all time and ordered that the new last day to begin trial was June 9, 2013.  There is nothing in the minute entry to indicate whether Leary waived time or raised an objection.  At the subsequent complex case management conference, the trial court again scheduled a future hearing, excluded all time and ordered that the new last day to begin trial was July 9, 2013.  On that occasion the record is clear that Leary waived the applicable time limits.

¶8　　　　One month later, and one week before the Rule 8 deadline, the State filed its written motion to dismiss without prejudice the 2011 case, and once again argued that it had re-indicted the only remaining defendants and had brought additional charges. The State further argued the motion was not made for the purpose of avoiding the time-limiting provisions of Rule 8. The trial court granted the motion "Pursuant to State's Motion to Dismiss" the next day, six days before the Rule 8 deadline.

¶9　　　　Three months later, Leary filed his motion to dismiss the instant case. Leary argued the State re-indicted him to circumvent the Rule 8 deadline because it knew it could not be ready for trial in the 2011 case and the trial court would not continue the matter. The trial court denied the motion and found the State had the authority to re-indict Leary, add additional counts and dismiss the original case. The court further noted that all parties knew "from the onset" that the State would re-indict the remaining defendants if the 2011 cases were not resolved. In its ruling on Leary's motion for reconsideration, the court added that the last day in the 2011 case had to be tolled because of the codefendant's competency evaluation. Leary filed a special action in this court and we declined jurisdiction. Once the State re-indicted Leary, the Rule 8 time limits began "anew." *State v. Lemming*, 188 Ariz. 459, 461 (App. 1997) (citation omitted).

## B.　Discussion

¶10　　　　We will uphold a trial court's ruling regarding Rule 8 unless the defendant shows both an abuse of discretion and prejudice. *State v. Wassenaar*, 215 Ariz. 565, 571, ¶ 16 (App. 2007). "Whether a trial court abused its discretion and prejudice resulted depends upon the facts of each case." *Id.* (citation omitted). To establish prejudice, a defendant must establish that the delay harmed his defense. *State v. Vasko*, 193 Ariz. 142, 147, ¶ 22 (App. 1998). A defendant who fails to establish prejudice or that he was deprived of a fair trial "has not established prejudice sufficient to warrant reversal of his conviction." *Wassenaar*, 215 Ariz. at 571, ¶ 16. Absent prejudice, a speedy trial violation does not warrant reversal of a conviction. *Vasko*, 193 Ariz. at 143, ¶ 3.

¶11　　　　The trial court in the 2013 case did not abuse its discretion when it held the State had the authority to re-indict Leary and seek dismissal of the 2011 case. "The court, on motion of the prosecutor showing good cause therefor, may order that a prosecution be dismissed at any time upon finding that the purpose of the dismissal is not to avoid the provisions of Rule 8." Ariz. R. Crim. P. 16.6(a). The 2011 trial court granted the motion "Pursuant to State's Motion to Dismiss[,]" which is sufficient indication the

2011 court found good cause to dismiss based on the new indictment and that the State did not seek to avoid Rule 8 as the State pled in its motion.[3]

**¶12** Also, Leary has failed to establish he suffered any prejudice. He does not identify witnesses who were not available for trial in the 2013 case because of any delay or any evidence he was not able to offer at trial and does not explain how re-indictment or delay otherwise affected his defense in any way. Finally, Leary does not explain how any delay ultimately deprived him of a fair trial. Therefore, even if there had been a violation of Rule 8, it would have been mere technical error that did not warrant reversal of Leary's convictions. *See Vasko*, 193 Ariz. at 143, ¶ 3.

## II. Prosecutorial Vindictiveness

**¶13** Leary also argues the State dismissed the 2011 case and re-indicted him to add a third count as an act of prosecutorial vindictiveness. Leary argues the vindictiveness resulted from his exercising his right to go to trial in the 2011 case.[4] The trial court found there was no evidence of bad faith or vindictiveness.

**¶14** We review the decision of whether to dismiss a case for vindictive prosecution for abuse of discretion. *State v. Mieg*, 225 Ariz. 445, 447, ¶ 9 (App. 2010). "A criminal defendant's constitutional right to due process protects him from prosecutorial decisions that are 'motivated by a desire to punish him for doing something that the law plainly allowed him to do.'" *Id.* at 447, ¶ 10 (quoting *United States v. Goodwin*, 457 U.S. 368, 384 (1982)). Due process prevents a prosecutor from punishing a defendant who exercises protected rights by subsequently subjecting that defendant to more severe charges. *Mieg*, 225 Ariz. at 447, ¶ 10.

**¶15** There are two ways a defendant can establish prosecutorial vindictiveness. First, a defendant can show actual vindictiveness with objective evidence that a prosecutor acted to punish the defendant for exercising his legal rights. *Id.* at 447, ¶ 11. Second, "a defendant may rely on a presumption of vindictiveness if the circumstances establish a 'realistic

---

[3] Leary cannot challenge the 2011 trial court's failure to expressly state it found good cause or that the State did not seek to avoid the provisions of Rule 8 because the 2011 case is not before us on appeal.

[4] Leary's motion to dismiss did not expressly argue prosecutorial vindictiveness. Leary did, however, argue prosecutorial vindictiveness at the hearing on the motion.

likelihood of vindictiveness.'" *Id*. (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). In the context of Leary's claim, however, "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." *Goodwin*, 457 U.S. at 384.

¶16          We consider all relevant circumstances in our determination of whether to apply a presumption of vindictiveness. *Mieg*, 225 Ariz. at 448, ¶ 15. In doing so, we bear in mind that the pretrial decisions of prosecutors are entitled to "especially deferential" judicial evaluation. *See Town of Newton v. Rumery*, 480 U.S. 386, 397 n. 7 (1987). If a defendant makes a prima facie showing that the decision to charge the defendant was more likely than not attributable to prosecutorial vindictiveness, the burden shifts to the State to overcome the presumption by presenting objective evidence that justified the prosecutor's action. *Mieg*, 225 Ariz. at 448, ¶ 12. A prosecutor's desire to punish a defendant for all criminal acts does not constitute vindictiveness that violates due process. *Id*.

¶17          The trial court did not abuse its discretion when it denied the motion to dismiss based on prosecutorial vindictiveness. There is no evidence of actual vindictiveness nor is there evidence that gives rise to a presumption of vindictiveness. It is within the prosecutor's discretion to determine whether to file criminal charges and which charges to file. *State v. Tsosie*, 171 Ariz. 683, 685 (App. 1992). While the prosecutor did not initially charge Leary with every conceivable felony count available, "it would ill-serve the public good to penalize the state when a prosecutor chooses not to bring all conceivable charges at the outset." *Mieg*, 225 Ariz. at 449, ¶ 18. Further, the State is entitled to respond to changes in the procedural posture of a case. So long as the State does not violate due process, this can include bringing new charges. *Id*. at ¶ 19.

¶18          There is no evidence that the State sought to punish, penalize or deter Leary when it re-indicted him and added an additional charge. The evidence shows the State reacted to the changing evidentiary and procedural posture of the case and did so in a permissible manner that did not prejudice Leary in any way.

## III.    The Denial of Severance

¶19          Leary argues the trial court erred when it denied his motion to sever the count of sale or transportation for sale of marijuana from the other counts. If the trial court denies a motion to sever, the defendant must

renew the motion during trial at or before the close of the evidence. Ariz. R. Crim. P. 13.4.c. A defendant waives a severance issue if the defendant does not make a timely motion to sever and does not subsequently renew the motion. *See id.*; *State v. Laird*, 186 Ariz. 203, 206 (1996). Leary does not claim he renewed his motion to sever and he does not contest the State's contention that he never renewed the motion.

**¶20** If a defendant does not timely renew a motion to sever, we ordinarily review only for fundamental error. *Id.* However, because Leary does not argue the failure to sever constituted fundamental error, he has waived the issue, and we do not address it. *See State v. Moreno-Medrano*, 218 Ariz. 349, 354, ¶ 17 (App. 2008) (finding that failure to allege fundamental error waives argument altogether).

## IV. The Testimony of the Law Enforcement Witnesses

**¶21** Leary next argues the trial court erred when it admitted certain testimony of a police officer and a federal agent. Leary argues the court erred when it allowed the witnesses to interpret language heard in recorded phone conversations and when it allowed them to express their opinions on "ultimate issues in the case." We address only the testimony Leary identifies in his brief. We review the admission of the testimony Leary objected to for abuse of discretion. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 167 (1990).

### A. The Interpretation of Language in the Phone Conversations

**¶22** Leary identifies nine instances in which he argues the trial court erred when it admitted the witnesses' interpretations of language used in recorded phone conversations.[5] All but one of those instances involved the testimony of the police officer. The officer testified that language heard in the conversations referenced drug trafficking and included references to the sale of cocaine and the price of marijuana. This included the officer's interpretation of the term "nine-inch ruler" and why she believed that meant nine ounces of cocaine.[6] The officer further testified that language heard in the conversations showed that Leary had relationships with drug traffickers, that Leary owed money to a drug trafficker, that a transaction(s) involved money that was not just Leary's

---

[5]     The jury listened to all of those recordings.

[6]     "[N]ine-inch ruler" is the only "drug language" from the conversations that Leary identifies.

and that Leary was purchasing drugs for other people. The officer testified that language in the conversations also indicated one of Leary's customers was very pleased with the drugs he purchased. In the single instance of testimony from the federal agent that Leary complains of in this context, the agent testified that language in the phone calls suggested that Leary brokered a drug deal between two other people and that the purchaser paid $5,800 for nine ounces of cocaine.

¶23　　　We find no error of any sort in the admission of the witnesses' interpretation of language in the recorded telephone calls. A trial court may admit the testimony of a law enforcement officer that interprets "drug language" and other associated language because it helps the jury understand the evidence. *State v. Nightwine*, 137 Ariz. 499, 503 (App. 1983); *State v. Walker*, 181 Ariz. 475, 480 (App. 1995). Questions about the accuracy and credibility of the testimony, as well as the weight, if any, to be given that testimony, were matters for the jury. *Pipher v. Loo*, 221 Ariz. 399, 404, ¶ 17 (App. 2009).

### B.　　Comments on Ultimate Issues at Trial

¶24　　　Leary also identifies four instances in which he argues the trial court erred when it allowed the two witnesses to comment on ultimate issues the jury was to decide at trial, including Leary's guilt. Leary argues the trial court erred when it allowed the federal agent to testify, "I'm proactive. I didn't charge anyone that I didn't believe committed the crime that I charged them with. I'm not responding to a crime. I'm watching it and proactively pursuing it. Mr. Leary wouldn't be sitting there if I didn't believe he was guilty." We find no error because the agent provided this answer in response to a question Leary posed during cross-examination. The answer was responsive to Leary's question and Leary did not object. "We will not find reversible error when the party complaining of it invited the error." *State v. Logan*, 200 Ariz. 564, 565-66, ¶ 9 (2001). Furthermore, "if error is invited, we do not consider whether the alleged error is fundamental." *Id.* at 565, ¶ 9. "One cannot 'complain about a result he caused.'" *State v. Doerr*, 193 Ariz. 56, 63, ¶ 27 (1998) (quoting Morris K. Udall et al., *Law of Evidence*, § 11, at 11 (3d ed. 1991)).

¶25　　　Leary failed to object to the other testimony he claims constituted improper comments on ultimate issues at trial. As a general rule, expert witnesses may not opine as to a defendant's guilt or innocence. *State v. Lindsey*, 149 Ariz. 472, 475 (1986). However, because Leary did not object to the testimony, we review only for fundamental error. *See State v. Gendron*, 168 Ariz. 153, 154 (1991). "To establish fundamental error, [a

defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Henderson*, 210 Ariz. at 568, ¶ 24. Even if a defendant establishes fundamental error, the defendant must still demonstrate the error was prejudicial. *Id*. at ¶ 26.

**¶26** In the first instance of testimony Leary did not object to, the State asked the police officer to explain why a series of intercepted phone calls caused her to believe a drug transaction had taken place. The officer explained that based on phone calls between a number of named individuals, she believed a codefendant met with another person and they pooled their money together. They then had another person meet a supplier, buy drugs and return the drugs to the codefendant. The officer did not mention Leary, and did not express an opinion on anyone's guilt. Regardless, it was permissible for the officer to summarize the contents of several intercepted phone calls and explain why she directed the investigation based on the content of those calls. The testimony did not usurp the function of the jury, did not take away a right that was essential to Leary's defense and did not otherwise deny Leary a fair trial. *See Henderson*, 210 Ariz. at 568, ¶ 24. Furthermore, Leary has failed to show prejudice.

**¶27** The next two instances of testimony Leary did not object to occurred when the federal agent answered jurors' questions. First, a juror asked the agent why authorities did not tap Leary's phones, and the agent provided a long narrative response. The only portion of that answer Leary contends improperly commented on an ultimate issue was the statement, "I believe that Mr. Leary was a customer of [a codefendant]. I believe I can demonstrate to you that that occurred on August 19th. I think he was a customer of cocaine, which he then brokered and sold to an unknown customer. That is the extent of what I can prove related to Mr. Leary."

**¶28** The agent's answer was a small part of a longer narrative that explained why investigators did not tap Leary's phones. Explaining what the agent believed and what he could prove gave context to other portions of his answer explaining what he could not prove, why he did not believe Leary was involved in drug trafficking to the same extent as others and, therefore, why investigators did not tap his phones. While the agent should not have expressed his belief of Leary's guilt, the manner in which he did so within the context of the question and answer was not fundamental error. *See Henderson*, 210 Ariz. at 568, ¶ 24.

¶29        Second, another juror question asked the agent to explain where Leary fit into the investigation, where he fit in the "hierarchy" of those involved and why the agent believed Leary was responsible for distribution of cocaine and marijuana.  The question ended with, "Full explanation, please?"  The agent again provided a long narrative answer.  On appeal, Leary contends the first portion of the agent's answer constituted an impermissible comment on an ultimate issue.  The agent stated:

> I'd be happy to give you a full explanation, but don't confuse my full explanation of what I'm telling you with what I can prove.  I believe Mr. Leary's guilty of purchasing 9 ounces of cocaine on August 19th.  Specifically, I believe he is guilty of sale of marijuana with [another person].

The agent then answered the question and included an explanation of what he believed the evidence showed.

¶30        The agent's answer was, again, a small portion of a much longer narrative response.  The question itself suggested that Leary operated in the "hierarchy" of the drug traffickers who were investigated, and that Leary was personally responsible for the distribution of cocaine and marijuana.  The portion of the answer Leary complains of indicated the agent believed these could be misconceptions, which the answer addressed.  The agent explained what he believed Leary was guilty of to give context to the agent's explanation for what he did not believe or could not prove Leary was guilty of.  The agent explained why investigators could not charge Leary with other offenses; why the agent did not want to mislead the jury to believe Leary distributed cocaine to the same level as a codefendant; that the agent could never prove Leary distributed cocaine to the same extent as the codefendant; and that while Leary may have purchased nine ounces of cocaine and sold it to someone, he "absolutely" did not engage in mass distribution of cocaine.  Again, while the agent should not have expressed his belief of Leary's guilt, the manner in which he did so within the context of the question and answer was not fundamental error.  *See Henderson*, 210 Ariz. at 568, ¶ 24.

## V.    Juror Misconduct

¶31        As the final issue on appeal, Leary argues the trial court erred when it denied his motion for mistrial based on juror misconduct.  Leary argues the court also failed to hold "a proper hearing" to determine if there was juror misconduct.

### A. Background

¶32        Approximately two weeks into the trial, the trial court learned of possible juror misconduct. The issue was whether an unidentified juror was communicating with a person named "Michael" who was a former tenant of Leary's. The trial court questioned the sixteen jurors individually and asked each of them a series of questions. Each juror told the trial court he or she did not know anyone who lived with a roommate named Mike or Michael, that nobody had tried to talk to the juror about the case and the juror had not talked to anyone about the case. The trial court found there was no evidence of misconduct, but nevertheless decided to hold an evidentiary hearing the next day.

¶33        The first witness who testified at the evidentiary hearing was Ms. Taylor, an attorney who lived with Michael and who also knew Leary. Ms. Taylor knew that Michael had once rented a house from Leary and that this relationship resulted in litigation between Michael and Leary. Ms. Taylor acknowledged she had discussed Leary's case with Michael, but only in the context of what she saw on the Superior Court's website. Ms. Taylor did not speak to any jurors and did not know if Michael had spoken to any jurors.

¶34        The second witness to testify at the evidentiary hearing was the Training Director for the Maricopa County Office of the Public Defender (the Training Director). It was she who contacted the court about possible juror misconduct. The Training Director had a temporary employee whose mother used to live with Michael when Michael rented a house from Leary. The employee told the Training Director that Michael told the employee's mother he was discussing the case with an unidentified juror. The Training Director disclosed this to the Public Defender, who agreed that the Training Director should contact the trial court. The employee also testified at the evidentiary hearing. She testified her mother told her that she had spoken to Michael and Michael claimed he had talked to an unidentified juror about the case. The employee was sufficiently concerned that she told the Training Director.

¶35        The trial court found there was no evidence of juror misconduct and denied Leary's motion for mistrial. Leary argued the trial court should conduct an additional evidentiary hearing to allow him the opportunity to question Michael. The trial court determined that it would hold an additional evidentiary hearing as soon as Leary subpoenaed Michael to appear. The trial court even offered to "issue an order" for

Leary, should he need one. However, Leary never subpoenaed Michael and never requested an additional evidentiary hearing.

### B. Discussion

**¶36** We review the decision to grant or deny a motion for mistrial based on jury misconduct for abuse of discretion. *State v. Hall*, 204 Ariz. 442, 447, ¶ 16 (2003). Juror misconduct requires a new trial only if the defendant proves actual prejudice or "if prejudice may be fairly presumed from the facts." *State v. Nelson*, 229 Ariz. 180, 184, ¶ 12 (2012) (quoting *State v. Davolt*, 207 Ariz. 191, 208, ¶ 58 (2004)). Upon an allegation that the jury has received extrinsic information, we will not presume prejudice without proof that the jury received extrinsic information and considered that information in its deliberations. *Id.*

**¶37** The trial court did not abuse its discretion when it denied Leary's motion for mistrial. The record contains no evidence that any juror had contact with Michael or anyone else, nor is there any evidence that any juror received extrinsic information from anyone or provided information to anyone. Furthermore, there is no evidence that Leary suffered prejudice from any alleged contact and there is no evidence from which we may presume prejudice. Regarding the failure to hold an additional evidentiary hearing, the trial court told Leary it would hold an additional hearing as soon as Leary subpoenaed Michael and even offered to help Leary with appropriate orders. The trial court's failure to hold an additional hearing

sua sponte, despite the absence of any effort by Leary to obtain the presence of the one witness he sought to question, was not error.

## CONCLUSION

¶38      For the above reasons, we affirm Leary's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED : ama