NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JACOB ORLANDO JONES, *Appellant.*

No. 1 CA-CR 20-0562
FILED 1-25-2022

Appeal from the Superior Court in La Paz County
No. S1500CR201900248
The Honorable Jessica L. Quickle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Peter B. Swann joined.

---

**W I L L I A M S,** Judge:

**¶1**　　　　Jacob Orlando Jones appeals his convictions for kidnapping, sexual assault, and aggravated assault. For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**　　　　Mary has two children with Jones, and a third child, Megan, from another relationship.[1] Mary has developmental delays and requires a range of social services. Based on concerns Jones was abusive, case workers helped Mary and the children secure their own apartment.

**¶3**　　　　In August 2019, Jones went to Mary's apartment and ordered her to go inside with the children. Jones took Mary's phone, told her they could not leave, and threatened to kill them. Over the course of several days, Jones forced Mary to engage in penile-vaginal and penile-anal intercourse and tried to smother her with a pillow. The children were present while Jones committed these offenses. At one point, Jones covered Megan's mouth and nose with his hands, only relenting when the child lost consciousness. He also held Megan down and hit her in the head. All the children, including Megan, were three years old or younger at the time.

**¶4**　　　　When Mary failed to contact her case workers, they went to her apartment with a sheriff's deputy to conduct a welfare check. Mary opened the door and whispered, "he found me." The deputy called for back-up, and they took Jones into custody. Although Jones denied committing the offenses, he appeared jittery, admitted to recent drug use, and gave varying accounts of how he arrived at the apartment.

**¶5**　　　　A detective conducted a "semi-cognitive" interview of Mary, a method typically used for juveniles to avoid suggested responses. While Mary struggled to provide specific dates and define relevant terms, she

---

[1]　　　　We use pseudonyms to protect the privacy of victims.

described the offenses in detail. A nurse examined Mary and Megan and observed injuries consistent with the offenses.

**¶6**        The State charged Jones with one count of attempted murder, a class 2 felony and dangerous crime against children (Count 1), one count of attempted murder, a class 2 felony (Count 2), one count of kidnapping, a class 2 felony (Count 3), three counts of kidnapping, class 2 felonies and dangerous crimes against children (Counts 4 through 6), three counts of sexual assault, class 2 felonies (Counts 7 through 9), three counts of aggravated assault, class 4 felonies (Counts 10 through 12), and three counts of aggravated assault, class 6 felonies (Counts 13 through 15). The State alleged that all counts constituted domestic violence offenses, and listed Mary and all three children as victims.

**¶7**        Jones waived his right to a jury trial, and the trial court held a bench trial. After the State's case-in-chief, Jones moved for an acquittal under Arizona Rule of Criminal Procedure ("Rule") 20. The court denied the motion as to Counts 1 through 8, 10, 11, and 14, and granted the motion as to the remaining counts. At the close of evidence, the court found Jones guilty of Counts 3, 5, 7, 8, 10, and 11, and not guilty as to the remaining counts. Jones was only convicted of counts involving Mary and Megan.

**¶8**        The trial court sentenced Jones to an aggregate term of 31 years' imprisonment. This timely appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.    *Complex Case Designation*

**¶9**        Jones contends the trial court violated his right to a speedy trial by designating the case complex. We review the court's determination of whether a case is complex for an abuse of discretion. *See State v. Wassenaar*, 215 Ariz. 565, 570, ¶ 9 (App. 2007). We will not find an abuse of discretion unless the determination was "manifestly unreasonable, exercised on untenable grounds or for untenable reasons." *Id.* at ¶ 11 (internal quotation marks and citations omitted).

**¶10**        A defendant has a constitutional right to a speedy trial. *See* U.S. Const. amend. VI; Ariz. Const. art. 2, § 11. In addition to constitutional requirements, the permissible time limit before a case must be brought to trial is governed by Rule 8.2. Under Rule 8.2(a)(3), the trial court may designate a case complex and extend the time limit for trial to commence.

A case is complex for the purposes of this rule if it is "so complicated, by virtue of its nature or because of the evidence required, that the ordinary limits for the time to trial are insufficient and must be extended to afford more time to prepare so that the case can be fairly and fully presented." *Snyder v. Donato*, 211 Ariz. 117, 120, ¶ 12 (App. 2005). The court may base its determination on the circumstances of a given case, including the nature of the charges and the extent of "discovery and evidentiary logistics involved." *Wassenaar*, 215 Ariz. at 570, ¶¶ 9-10.

**¶11** Before trial, the State moved to designate the case complex, citing the seriousness of the charges, number of victims, extensive medical records, possible DNA evidence, and an ongoing defense investigation. Over Jones's objection, the trial court granted the motion, finding that the circumstances of the case warranted a complex designation. As trial approached, the court notified the parties that the Arizona Supreme Court suspended Rule 8.2 requirements and jury trials would be postponed due to the COVID-19 pandemic. *See* Ariz. S. Ct., Admin. Order No. 2020-60. At the next court setting, however, the court indicated that jury trials would resume with added safety measures. *See* Ariz. S. Ct., Admin. Order No. 2020-75. Jones elected to proceed with a bench trial, noting his desire to avoid the lengthy process of selecting and maintaining a jury under the new COVID-19 safety measures.

**¶12** At trial, the State presented evidence from multiple medical examinations of four victims, which included one developmentally delayed adult and three young children. The State admitted data from Mary's phone to corroborate portions of her testimony. The parties agreed to the admission of DNA testing results, even though the analysis was inconclusive. In Jones's case-in-chief, he called a paramedic to testify as to the initial medical evaluation of one of the victims. Taken together, the seriousness of the charges and the distinct circumstances of the case, we see no abuse of discretion in the trial court's designation of this case as complex under Rule 8.2(a)(3).

**¶13** To the extent that Jones claims the complex case designation forced him to waive his right to a jury trial and allowed the State to avoid its disclosure obligations, we are not persuaded. A conviction will not be overturned for a violation of Rule 8.2 absent a showing the defendant was prejudiced by the delay. *See State v. Vasko*, 193 Ariz. 142, 147, ¶ 22 (App. 1998). Jones voluntarily waived his right to a jury trial and nothing from the record establishes that his decision to proceed with a bench trial harmed his defense. *See State v. Butrick*, 113 Ariz. 563, 565-66 (1976) (recognizing defendants' right to voluntarily waive a jury trial). The trial court informed

the parties that jury trials had recommended with added safety measures. Jones's decision to streamline the process by electing to forgo a jury trial does not, without more, constitute prejudice. Jones has also failed to allege either that exculpatory evidence was lost, or inculpatory evidence was discovered during the time between the complex case designation and trial. The evidence still outstanding at the time of the State's request for complex case designation, namely the results of DNA testing, in no way harmed Jones's defense. No reversible error on these grounds exists.

## II.   *Technical Difficulties During Trial*

**¶14**        Jones contends that technical difficulties throughout the trial led to the denial of his right to due process, constituting structural error. We review a claim of structural error de novo. *State v. Hancock*, 240 Ariz. 393, 396, ¶ 7 (App. 2016). An error is considered structural if it impacts the entire "trial from beginning to end," tainting "the framework within which the trial proceeds." *State v. Henderson*, 210 Ariz. 561, 565, ¶ 12 (2005) (internal quotation marks and citations omitted). There are relatively few instances in which structural error occurs. *State v. Ring*, 204 Ariz. 534, 552, ¶ 46 (2003). Such instances include the complete denial of criminal defense counsel, denial of a public criminal trial, and defective reasonable doubt instructions. *Id.* at 552-53, ¶ 46.

**¶15**        To prevent the spread of COVID-19, the trial court employed various safety measures, including the use of two-way video technology for parties outside the courtroom and protective shields and face masks for parties inside the courtroom. When issues arose, the court took breaks to resolve technical problems with audio or video and, when necessary, requested that witnesses or counsel repeat themselves.

**¶16**        Jones has failed to establish that relatively minor technical difficulties during his trial amounted to structural error. Though proceeding with trial during a global pandemic is less than ideal, a defendant is entitled "to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). The trial court acted within its discretion in adopting safety measures to minimize the spread of COVID-19, resolving technical issues as they arose. *See Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 13 (App. 2010) (recognizing the court's "broad discretion over the management of a trial"); Ariz. R. Evid. 611(a). The record does not show, as Jones urges, that the trial lacked the solemnity necessary for a criminal proceeding. We see no structural error.

### III. *Sufficiency of Evidence of Kidnapping Involving Megan*

**¶17** Jones argues the State failed to present sufficient evidence he kidnapped Megan, beyond the evidence needed to prove he committed aggravated assault. We review the sufficiency of the evidence de novo, considering all facts and resolving all evidentiary conflicts in the light most favorable to sustaining the verdict. *See State v. Bible*, 175 Ariz. 549, 595 (1993). We will reverse only where a complete absence of probative facts supports the conviction. *State v. Mathers*, 165 Ariz. 64, 66 (1990).

**¶18** As relevant here, a person commits the offense of kidnapping by knowingly restraining another with the intent to inflict death, physical injury, or to "[p]lace the victim or a third person in reasonable apprehension of imminent physical injury to the victim or the third person." A.R.S. § 13-1304(A)(3)-(4). The State presented evidence that Jones confined Megan to the apartment for multiple days, threatened harm or death, and assaulted Megan's mother. The State also presented evidence that, at one point, Jones held Megan down and hit her in the head. This evidence was sufficient to show that Jones, by threatening act or verbal command, compelled Megan's confinement. *See State v. Dutra*, 245 Ariz. 180, 182-84, ¶¶ 9-19 (App. 2018) (interpreting the elements of the kidnapping statute).

**¶19** In contrast, a person commits the offense of aggravated assault if he "intentionally or knowingly impedes the normal breathing or circulation of blood of another person by applying pressure to the throat or neck or by obstructing the nose and mouth" in the context of a domestic violence assault. A.R.S. § 13-1204(B). The State presented evidence, separate from the kidnapping, that Jones covered Megan's nose and mouth until she lost consciousness. Sufficient evidence supports each of Jones's convictions for the kidnapping and aggravated assault of Megan.

### IV. *Witness Credibility*

**¶20** Jones challenges the credibility of two of the State's witnesses, arguing without their testimony insufficient evidence supports his convictions. We will not evaluate the credibility of witnesses or reweigh evidence on appeal. *See State v. Cid*, 181 Ariz. 496, 500 (App. 1995). As the factfinder, the trial court was in the best position to assess the witnesses' demeanor, resolve conflicts in testimony, and make credibility determinations. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004). Jones provides no basis for disturbing the court's evaluation.

**CONCLUSION**

¶21     We affirm Jones's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:     AA